# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| IN RE THIRD PARTY SUBPOENA DUCES TECUM<br><br>BUZZBALLZ, LLC<br><br>         *Plaintiff,*<br><br>    - v.-<br><br>MPL BRANDS NV, INC.<br><br>         *Defendant.* | 3:25-mc-16-RJG<br><br>Northern District of California<br>Civil Action No. 5:24-cv-04004-EKL |

## NONPARTY SAZERAC COMPANY, INC.'S
## MOTION TO QUASH SUBPOENA

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, nonparty subpoena recipient Sazerac Company, Inc. ("Sazerac"),[1] by and through undersigned counsel, timely moves this Court to quash a subpoena *duces tecum* (the "Subpoena") served on Sazerac by MPL Brands NV, Inc. ("MPL"), with regard to an action pending in the U.S. District Court for the Northern District of California with BuzzBallz, LLC ("BuzzBallz"). In support thereof, Sazerac relies upon the accompanying Declaration of Maurice Loebl and supporting exhibits.

---

[1] Pursuant to Local Rule 8.1, Sazerac states that its principal place of business is located in Jefferson County, Kentucky. (*See* Declaration of Maurice Loebl, ¶ 3, attached hereto as **Exhibit A**.)

## I. INTRODUCTION

Sazerac respectfully requests that the Court quash MPL's Subpoena because it requires the disclosure of highly confidential, irrelevant, and privileged information, and it imposes an undue burden on nonparty Sazerac. More specifically, BuzzBallz initiated an action against MPL for trade dress infringement, trademark infringement, patent infringement, dilution, and unfair competition, all based on MPL's sales of its "Big Sipz" products, which compete with BuzzBallz's products.[2] After the litigation was filed, Sazerac entered into an agreement to acquire BuzzBallz.

On August 14, 2025, MPL served the Subpoena on Sazerac, purportedly in an attempt to acquire information for the California Litigation. (The Subpoena is attached hereto as **Exhibit D**.) However, the Subpoena is not related to, and not necessary for, the issues in the underlying action and instead seeks irrelevant, highly proprietary, and privileged information from BuzzBallz's parent company, Sazerac, intended to harass Sazerac. Most importantly, the Subpoena seeks documents related to Sazerac's acquisitions and other valuation information, which is highly competitive, commercially sensitive, and risks harming Sazerac's competitive standing in the market, since it would release confidential and competitive information about Sazerac (including to one of its competitors, MPL) and severely compromise Sazerac's ability to negotiate merger and acquisition transactions in the future. Accordingly, as further set forth below, the Court should quash MPL's Subpoena.

---

[2] That litigation was first brought in Texas and later transferred to the Northern District of California, and it is captioned as *BuzzBallz, LLC v. MPL NV Brands Inc. d/b/a Patco Brands,* Case No. 5:24-cv-04004-EKL (Sep. 15, 2023) (the "California Litigation"). (A copy of the operative complaint in the California Litigation is attached hereto as **Exhibit B**.) The patent infringement claim has been dismissed. (A copy of MPL's counterclaims is attached as **Exhibit C**.)

1

## II. BACKGROUND

BuzzBallz is a woman-founded and family-operated distillery, winery, and brewery, with a portfolio of spirit products, including its spherical iconically shaped pop-top containers. MPL is a spirits distiller headquartered in California. In September 2023, Buzzballz filed suit against MPL for trade dress and trademark infringement, as well as patent infringement, based in part on MPL's "Big Sipz" product that uses rounded plastic-and-metal packaging. (*See* BuzzBallz's Complaint, Ex. B.) In February 2025, MPL filed counterclaims, seeking a declaratory judgment of invalidity for one of the patents at issue, alleged monopolization, and relief for unfair competition and cybersquatting. (*See* MPL's Counterclaim, Ex. C.) In March 2024, Sazerac, a family-owned, privately held leading distiller of spirits, with a portfolio of approximately 400 brands spanning a wide variety of spirits, announced its intention to acquire BuzzBallz. Although Sazerac has a common interest based on its acquired ownership interest in BuzzBallz, Sazerac is a nonparty to the California Litigation and remains a separate entity from BuzzBallz.[3] (Loebl Decl. ¶ 6, Ex. A.)

On August 14, 2025, MPL served Sazerac with the Subpoena.[4] Therein, MPL requests Sazerac to provide documents in response to five requests, including highly confidential and

---

[3] Although "a litigating parent corporation has control over documents in the physical possession of its subsidiary corporation where the subsidiary is wholly owned or controlled by the parent," separate and distinct corporate identities are not readily disregarded, "except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary." *Hiser v. Volkswagen Grp. of Am., Inc.*, 2016 U.S. Dist. LEXIS 203380, 2016 WL 11409339, at *6 (W.D. Ky. Aug. 1, 2016) (finding control when own 99.5% of stock); *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988); *see also Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del. 2002) (finding no control when two corporate entities were not "so intertwined as to render meaningless their separate corporate identities").

[4] Of note, the Court in the underlying litigation previously entered an order which limited the issuance of a nonparty subpoena "to the non-overlapping materials or information, subject to the nonparty and other Party's rights to object to and otherwise challenge the subpoena." (*See* the Court's Order at p. 2, attached hereto as **Exhibit E**.)

competitively sensitive business information, as well as privileged communications and documents that have no bearing on the California Litigation. MPL's Requests seek the following:

1. <u>Request No. 1</u>: All Documents, Communications, and Things exchanged with Arlington relating to Sazerac's acquisition of BuzzBallz, including market analyses, competitive analyses, financial models, and surveys.

2. <u>Request No. 2</u>: Documents and Things sufficient to show any valuation or estimate of the value of the Asserted Trademark/Trade Dress, the Patent-in-Suit, and/or any Related Patents/Applications, including but not limited to the offering memorandum for the BuzzBallz acquisition, transfer pricing document, letter of intent, term sheet, purchase agreement, IP valuation documents, or any valuation documents prepared by or on behalf of Sazerac for the BuzzBallz acquisition.

3. <u>Request No. 3</u>: Documents or Things sufficient to show any assessment of the potential or likely monetary or other damages that could be recovered by BuzzBallz as a result of this Action or any BuzzBallz/Patco Litigation, including but not limited to all valuation documents exchanged with Arlington or any other entity involved in Sazerac's acquisition of BuzzBallz.

4. <u>Request No. 4</u>: Documents or Things sufficient to show any valuation of BuzzBallz or any BuzzBallz assets.

5. <u>Request No. 5</u>: Documents or Things sufficient to show any analysis or valuation of BuzzBallz's intellectual property. (Ex. D at pp. 7-8.)

These Requests are irrelevant and seek privileged documents that have nothing to do with the question of whether MPL infringed on BuzzBallz's trade dress and trademarks, or whether BuzzBallz's patent is invalid, or whether it engaged in unfair competition. Sazerac served its objections to the Subpoena on August 27, 2025. (Sazerac's Subpoena Objection Letter, 8/27/25, is attached hereto as **Exhibit F**.)

Now, Sazerac files this timely Motion to Quash the Subpoena. As explained below, the Court should quash the Subpoena pursuant to Rule 45(d)(3)(A)(iii) and (iv) and 45(d)(3)(B)(i).

III. **ARGUMENT**

The Court should quash MPL's Subpoena because it seeks privileged, irrelevant, and unnecessary information for the pending California Litigation. In particular, the Subpoena: (1) seeks Sazerac's highly confidential and proprietary commercial information that is irrelevant and disproportional to any claim or defense in the pending case, (2) seeks privileged information related to the BuzzBallz valuation, and (3) is overly broad and unduly burdensome. Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv) and 45(d)(3)(B)(i).

A. <u>The Court Should Quash MPL's Subpoena as It Seeks Sazerac's Highly Confidential and Proprietary Commercial Information, which is Irrelevant to the California Litigation.</u>

Parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ..." Fed. R. Civ. P. 26(b)(1). The adoption of the clause concerning proportionality in 2015 was made "to improve a system of civil litigation that in many cases has become too expensive, time-consuming, and contentious, inhibiting effective access to the courts." *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273–74 (6th Cir. 2021) (quoting John G. Roberts, Jr., 2015 Year-End Report on the Federal Judiciary 6 (2015)). "Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new rule 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Id.*

Even before the addition of the proportionality limitation, courts in the Sixth Circuit routinely cautioned against discovery-related fishing expeditions that seek information far beyond the permissible scope of discovery. *See, e.g., Conti v. Am. Axle and Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (in considering the scope of discovery, courts balance the "right to discovery

4

with the need to prevent 'fishing expeditions.'"); *Grayiel v. AIO Holdings, LLC*, 2017 WL 11592083, at *3, 2017 U.S. Dist. LEXIS 233617, at *9 (W.D. Ky. May 2, 2017) ("[W]hile the relevancy standard may be a liberal one, it is not a 'license to go fishing' with the hope that something might be discovered.").

Further, Rule 45(d)(3)(B)(i) gives a court discretion to quash or modify a subpoena that requires a nonparty to disclose "a trade secret or other confidential research, development, or commercial information." In turn, "[c]onfidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Anderson v. Old Nat'l Bancorp*, 2010 WL 5463397, 2010 U.S. Dist. LEXIS 138629, at *10 (W.D. Ky. Dec. 28, 2010) (quoting *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994)). Among the factors that the Court may review when evaluating a claim for confidentiality are as follows:

> [T]he extent to which the information is known both inside and outside the business; the precautions taken to guard the secrecy of the information; the value of the information; and the amount of time and expense it would take for others to acquire and duplicate the information.

*Universal Delaware, Inc. v. Comdata Network, Inc.*, 2011 WL 1085180, 2011 U.S. Dist. LEXIS 28963, at *3 (M.D. Tenn. Mar. 21, 2011) (citing *Deegan v. Strategic Azimuth, LLC*, 768 F. Supp. 2d 107 (D.D.C. 2011)). Here, MPL's Requests reach far beyond information pertaining to whether MPL does or does not infringe upon BuzzBallz's trade dress and/or trademarks, BuzzBallz's '904 or '441 patents, or whether BuzzBallz engaged in any unfairly competitive activity with the USPTO prior to March 2024. Likewise, the Requests seek information beyond whether BuzzBallz's patent is invalid or that it engaged in unfair competition. Indeed, MPL's Subpoena seeks to pressure BuzzBallz by harassing Sazerac, a nonparty, for highly confidential and

competitively sensitive information about Sazerac's business, its internal actions, knowledge, investment decision making, and analyses, all of which are irrelevant to the California Litigation. While MPL may assert that this information may be produced "attorneys' eyes only," that does not eliminate the issue. This highly competitively sensitive information simply should not be disclosed at all, given the heightened risk of further disclosure to third parties. There is simply no reason that this valuation information should be exposed, even to counsel.

1. **Requests Concerning Sazerac's Acquisition of BuzzBallz are Irrelevant and Consist of Sazerac's Highly Confidential and Competitive Commercial Information.**

MPL seeks to force Sazerac to produce documents concerning Sazerac's acquisition of BuzzBallz, Sazerac's financials and financial models, valuation of BuzzBallz and its products, market analyses, and Sazerac's business plans, none of which are relevant to the claims in the pending California Litigation. For example, in Request No. 1, MPL seeks "All [d]ocuments, [c]ommunications, and [t]hings exchanged with Arlington relating to Sazerac's acquisition of BuzzBallz, including market analyses, competitive analyses, financial models, and surveys." (Ex. D, p. 7.) Additionally, in Request No. 4, MPL seeks "[d]ocuments or [t]hings sufficient to show any valuation of BuzzBallz or any BuzzBallz assets." *Id*.

None of these requests, however, have any relevance to whether MPL did or did not infringe BuzzBallz's trade dress and/or trademarks or patents or how BuzzBallz allegedly engaged in improper disclosures to the USPTO or engaged in unfair competition. They also have no bearing on any damages alleged in the California Litigation, as BuzzBallz is seeking disgorgement of MPL's profits, and the focus is on MPL, not BuzzBallz, much less Sazerac. Rather, they relate to Sazerac's process and strategy for investigating a potential acquisition and overall negotiations to

acquire an interest in the company, which have nothing to do with the pending California Litigation. Any suggestion otherwise is disingenuous.

MPL stretches its Subpoena even further with respect to Sazerac's acquisition of BuzzBallz by requesting "documents and things sufficient to show any valuation or estimate of the value of the Asserted Trademark/Trade Dress, the Patent-in-Suit, and/or any Related Patents/Applications…" and "documents or things sufficient to show any analysis or valuation of BuzzBallz's intellectual property" in Request Nos. 2 and 5, respectively. Of course, Sazerac's acquisition work has nothing to do with whether there is infringement, which depends on a comparison of the product to the trademark. In fact, Sazerac's acquisition of BuzzBallz did not even begin until 2024 and did not close until May 2024. (Ex. A, Loebl Decl. ¶ 4.) Even if Sazerac conducted analyses regarding same, a third party's analysis does not make infringement or unfair competition more or less likely. Instead, all of these Requests constitute a fishing expedition intended to harass Sazerac and improperly gain some form of leverage in the California Litigation. For this reason alone, the Court should quash Request Nos. 1, 2, 4, and 5.

Additionally, all of the above-mentioned Requests involve Sazerac's highly confidential and proprietary commercial information. "Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from who the information was obtained." *Anderson*, 2010 WL 5463397, 2010 U.S. Dist. LEXIS 138629, at *10 (quoting *Diamond State Ins. Co.*, 157 F.R.D. at 697). Here, MPL's Requests seek information that is only known inside Sazerac and not shared outside of the company, particularly its competitors such as MPL.

MPL, a competitor of Sazerac and BuzzBallz, is using the California Litigation as pretext

to obtain confidential market and business information that will give it an unfair advantage in a competitive market. This is highly improper. Courts regularly quash nonparty subpoenas in such circumstances. *See, e.g.*, *Mannington Mills, Inc. v. Armstrong World Indus. Inc.*, 206 F.R.D. 525, 530-32 (D. Del. 2002) (granting motion to quash where the subpoena requested that a nonparty disclose confidential information to a competitor); *In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738, 743 (S.D. Ohio 2003) (granting motion to quash where subpoena requested confidential information from nonparty that was a direct competitor); *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (noting that courts apply a presumption that "disclosure to a competitor is more harmful than disclosure to a noncompetitor."); *Int'l Coal Grp., Inc. v. Tetra Fin. Grp. LLC*, 2010 WL 2079675, at *2, 2010 U.S. Dist. LEXIS 51869, at *5 (D. Utah May 24, 2010) (quashing subpoena after finding nonparty and defendant are direct competitors).

Indisputably, Sazerac's acquisitions and valuation information is highly confidential, competitive, and sensitive. The production of such information would almost certainly hurt Sazerac's competitive standing in the market, since it would contain insight into Sazerac's internal financial analyses, strategic growth plans, and acquisition criteria, which would in turn severely compromise Sazerac's ability to negotiate merger and acquisition transactions in the future. It is no coincidence that MPL has proposed that Sazerac purchase the Big Sipz line. (*See* Ex. A, Loebl Decl., ¶ 7.) If Big Sipz were to obtain this information from Sazerac, it would gain an unwarranted window into Sazerac's acquisition strategy, pricing models, and valuation metrics—precisely the type of sensitive competitive intelligence courts have held should not be disclosed to rivals.

The documents sought by MPL are of such a highly confidential nature that the risk of competitive harm from disclosure far outweighs any conceivable justification for production, even

8

under the strictest protective measures. Protective orders and "attorneys' eyes only" designations are not fail-safe; once information is disclosed to third parties outside Sazerac's control, the risk of leakage—whether through inadvertent disclosure, cybersecurity breaches, or counsel later joining a competitor—cannot be eliminated. Courts have long recognized this reality. *See, e.g.*, *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 290 (D. Del. 1985) (observing that disclosure of trade secrets in litigation, even under protective orders, may "by indirection [become] the means of ruining an honest and profitable enterprise" (quoting 8 J. Wigmore, Evidence § 2212, at 155 (McNaughton rev. 1961)).

The risk is particularly acute here. MPL seeks Sazerac's acquisition and valuation information—materials that would reveal Sazerac's internal financial analyses, business strategies, and future plans—while at the same time proposing that Sazerac purchase MPL's "Big Sipz" line. Compelling production of this information, even on an "attorneys' eyes only" basis, would in effect force Sazerac to deliver its most sensitive financial and strategic information directly into the hands of a competitor and potential transaction counterparty. The resulting competitive harm would be irreversible. The potential prejudice to Sazerac cannot be overstated.[5]

Relatedly, the Requests seek personal financial information from the sellers of BuzzBallz's membership interests (the "Sellers"). All of the Sellers involved in the acquisition are individuals or trusts for individuals. Request No. 2 seeks disclosure of the purchase price or the structure of the purchase price, which would also disclose the Sellers' personal financial information. Not only is this information irrelevant to whether MPL infringed on BuzzBallz's trademark and trade dress,

---

[5] Again, producing this information under an "attorneys' eyes only" designation is not enough as, based on MPL's anticipated assertion of relevance, is likely to be paraphrased by counsel, disclosed to and used by experts, used in open court, and, of course, may inadvertently be disclosed to others.

but it could cause irreparable harm to the individuals who must disclose the information. The Court should, therefore, quash the Requests. *See Eitel v. PNC Bank, N.A.*, 2022 U.S. Dist. LEXIS 54161 (W.D. Ky. Mar. 23, 2022) (finding broad requests for personal financial information to be irrelevant and overreaching).

> 2. **Requests Concerning Sazerac's Knowledge About BuzzBallz's Intellectual Property and its Valuation are Irrelevant.**

MPL also seeks production from Sazerac of various documents concerning Sazerac's knowledge about the value of BuzzBallz's intellectual property, none of which have any relevance to the pending California Litigation. For instance, in Request No. 2, MPL seeks

> [d]ocuments and [t]hings sufficient to show any valuation or estimate of the value of the Asserted Trademark/Trade Dress, the Patent-in-Suit, and/or any Related Patents/Applications, including but not limited to the offering memorandum for the BuzzBallz acquisition, transfer pricing document, letter of intent, term sheet, purchase agreement, IP valuation documents, or any valuation documents prepared by or on behalf of Sazerac for the BuzzBallz acquisition. (Ex. D, p. 7.)

Relatedly, in Request No. 5, MPL seeks "[d]ocuments and [t]hings sufficient to show any analysis or valuation of BuzzBallz's intellectual property." *Id*. Although the district court in the California Litigation ordered production of the acquisition agreement, it was only for the purpose of standing, not for valuation, and it was limited to review by MPL's counsel only. (*See* Court's Order, p. 2, Ex. E.) Any valuation of BuzzBallz's intellectual property has nothing to do with whether MPL infringes BuzzBallz's trademarks or trade dress. Rather, these requests all appear to be MPL's attempt to obtain discovery on other matters in the hopes of finding something to raise against BuzzBallz.

These Requests have no relevance to any claim for trade dress and trademark infringement, or disclosures to the USPTO. What is clear, however, is that these Requests again focus on

Sazerac's business valuation—highly proprietary information that a competitor should never see—whether they are using the information for their own acquisition or competing with Sazerac to buy another business. While MPL may assert that the confidentiality concerns can be addressed through a protective order that limits disclosure or use, it is well settled that a *nonparty* should not have to produce highly proprietary, competitively sensitive business information even with the protections of a protective order limiting disclosure for use in the litigation or to counsel only. In fact, there is a presumption that requiring a nonparty to disclose confidential information would be harmful. *See Int'l Coal*, 2010 WL 2079675 at *2, 2010 U.S. Dist. LEXIS 51869, at *5.

B.        The Court Should Quash MPL's Subpoena Because It Seeks Privileged Information.

"On timely motion, the court . . . must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). A court "must quash a subpoena that . . . requires disclosure of privileged or other protected matter" including requiring a person to "disclose a trade secret or other confidential research, development, or commercial information." *StoneEagle Servs. v. Pay-Plus Sols., Inc.*, 2015 WL 1022083, 2015 U.S. Dist. LEXIS 28572, at *3-4 (N.D. Ohio Mar. 9, 2015).

Here, MPL's Request Nos. 2, 3, and 5 all seek documents related to Sazerac's valuation of BuzzBallz's intellectual property during Sazerac's acquisition of BuzzBallz, including the assessment of potential damages that could be recovered by BuzzBallz as part of not only the California Litigation but "any BuzzBallz/Patco Litigation," clearly beyond the scope of the underlying action. The acquisition, however, involved the provision of legal advice by Sazerac's in-house counsel and outside counsel. (Ex. A, Loebl Decl., ¶ 5.) Moreover, any assessment regarding the damages that BuzzBallz could recover from the California Litigation, or any other

11

litigation with MPL, is protected by the attorney work product privilege. MPL essentially seeks privileged information as to the legal assessment of the underlying litigation from BuzzBallz's parent in order to harass Sazerac. The Requests are, therefore, subject to the attorney-client privilege or work product privilege, and they should be quashed accordingly.

C.    The Court Should Quash MPL's Subpoena Because It is Overly Broad and Subjects Sazerac to Undue Burden.

Under Rule 45, an "issuing court must quash or modify a subpoena" if it would "subject a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv);[6] *see also Lyons v. My Pillow, Inc.*, 2023 WL 8450724, at *3, 2023 U.S. App. LEXIS 32545, at *5 (6th Cir. Dec. 6, 2023) ("the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden."). In considering whether a subpoena creates an undue burden, courts evaluate:

> relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed. The key is balancing the need for discovery against the burden imposed on the person ordered to produce documents, and the status of the person as a non-party is a factor.

*Graham Packaging Co., L.P. v. Indorama Ventures AlphaPet Holdings, Inc.*, 2024 WL 4593866, at *4, 2024 U.S Dist. LEXIS 195317, at *10 (W.D. Ky. Oct. 25, 2024) (quoting *In re Mod Plastics Corp.*, 890 F.3d 244, 250-51 (6th Cir. 2018)).

Here, all of MPL's Requests are overly broad. The requests for "[a]ll documents, communications, and things" (Request No. 1), "documents and things" (Request No. 2), or

---

[6] In 2013, Rule 45 underwent changes. What is now subsection (d) was previously subsection (c), and thus the case law discussing the previous Rule 45(c) remains good law for analyzing what is now subsection (d). *See* Fed. R. Civ. P. 45 cmt to 2013 Amendment ("Subdivision (d) contains the provisions formerly in subdivision (c).").

"documents or things" (Request Nos. 3-5) are plainly vague and overbroad, particularly given the lack of any relevance to the underlying California Litigation, as discussed above. *See*, *e.g.*, *Neo Ivy Cap. Mgmt. LLC v. Savvysherpa LLC*, 2019 WL 1435058, at *1, 2019 U.S. Dist. LEXIS 55579, at *15 (D. Minn. Mar. 8, 2019) (finding subpoena requesting "[a]ll Documents and Communications relating to any actual or planned investment activity" to be "overly broad and unduly burdensome"), report and recommendation adopted, 2019 WL 1430156, 2019 U.S. Dist. LEXIS 54227 (D. Minn. Mar. 29, 2019).

      MPL's Requests are also overly broad as to their timeframe. Indeed, most of them have no time limitation whatsoever. *See Lyons*, 2023 WL 8450724 at *3, 2023 U.S. App. LEXIS 32545, at *7-8 (affirming the district court's order to quash a subpoena that sought "all" documents in various categories because "there [was] no ceiling on the age of the materials [the subpoenaed party] must unearth to comply.")

      Moreover, requiring Sazerac, a nonparty, to produce documents regarding valuation of BuzzBallz's assets or intellectual property subjects Sazerac to a clear undue burden and essentially conscripts Sazerac as an unpaid expert witness for MPL. *See* Fed. R. Civ. P. 45(d)(3)(B)(ii) (restricting parties from using subpoenas to obtain "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."). The valuation analyses and internal financial modeling MPL seeks fall squarely within the type of expert-level assessments that Rule 45 was designed to shield from compelled disclosure. Forcing Sazerac to turn over such materials would effectively require it to divulge proprietary analyses it prepared for its own strategic purposes—analyses that were never intended for litigation and that go well beyond mere fact discovery.

In sum, MPL's Subpoena imposes an undue and disproportionate burden on Sazerac by demanding the collection and review of thousands of documents. (Ex. A, Loebl Decl., ¶ 9.) The breadth and nature of MPL's Requests would require Sazerac to undertake the very type of document review and production obligations reserved for parties to litigation, effectively conscripting Sazerac to serve as an unretained expert—which it plainly is not. Rule 45 does not permit a litigant to shift the costs and burdens of discovery onto a disinterested third party simply because doing so is easier than developing its own proof. Because MPL's Subpoena seeks to impose the burdens of party discovery on a nonparty, the Court should quash it in its entirety.

## IV. CONCLUSION

For the foregoing reasons, Sazerac respectfully requests that the Court enter an order quashing the Subpoena.

Respectfully submitted,
Stoll Keenon Ogden PLLC


 /s/ Chadler M. Hardin
Chadler M. Hardin
Andrew T. Hagerman
STOLL KEENON OGDEN PLLC
400 West Market Street, Suite 2700
Louisville, KY 40202
Tel: (502) 333-6000
chad.hardin@skofirm.com
andrew.hagerman@skofirm.com
**Counsel for Sazerac**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court on the 28th day of August, 2025 using the Court's ECF filing system, and emailed to:

PERKINS COIE
M. Craig Tyler
405 Colorado St. Ste. 1700
Austin, Texas 78701
737.256.6113
ctyler@perkinscoie.com

Daniel T. Shviodian
3150 Porter Drive
Palo Alto, California 94304
650.838.4300
dshvodian@perkinscoie.com
*Counsel for MPL*

HAYNES AND BOONE, LLP
Jason T. Lao
Andrea Levenson
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
949.202.3000
Jason.lao@haynesboone.com
Andrea.levenson@haynesboone.com

Jason P. Bloom
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
214.651.5000
Jason.bloom@haynesboone.com

Jason W. Whitney
112 East Pecan Street, Suite 1200
San Antonio, Texas 78205
210.978.7000
Jason.whitney@haynesboone.com
*Counsel for Buzzballz, LLC*

                                                   */s/ Chadler M. Hardin*
                                                   **Counsel for Sazerac**